# EXHIBIT A



January 30, 2025

***Via E-mail (OMBFOIA@omb.eop.gov)***

FOIA Officer
Office of Management and Budget
725 17th Street NW, Room 9272
Washington, DC 20503

**Re:    Freedom of Information Act Request: Withholding of Funds for Clean Energy, Energy Affordability, and Environmental Quality**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"), from Sierra Club, a nonprofit organization with more than 600,000 members nationwide dedicating to preserving the natural and human environment.

**REQUESTED RECORDS**

Sierra Club requests the following records[1] in the possession, custody, or control of the Office of Management and Budget ("OMB"), including, but not limited to OMB's Office of the Director, Management and Operations Division, and Budget Review Division:

(1)  All records reflecting communications to any of the following agency offices with instructions to temporarily or permanently withhold disbursements for a <u>specific</u> funding program, or an individual grant, loan, or loan guarantee, between January 20, 2025 and the date of your search for records:

    (a)  Department of Energy
        (i)      Loan Programs Office
        (ii)     Office of Clean Energy Demonstrations
        (iii)    Office of Energy Efficiency and Renewable Energy

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or otherwise produced, reproduced or stored), letters, memoranda, correspondence, notes, applications, completed forms, studies, reports, reviews, guidance documents, policies, telephone conversations, telefaxes, emails, documents, databases, drawings, graphs, charts, photographs, minutes of meetings, recordings of meetings, and any other compilation of data from which information can be obtained.

       (iv)   Office of Electricity
       (v)    Office of State and Community Energy Programs
   (b) Environmental Protection Agency (all offices)
   (c) Department of Agriculture
       (i)     Rural Development office, regarding the following programs only:
            1)  Empowering Rural America [New ERA]
            2)  Powering Affordable Clean Energy [PACE]
            3)  Rural Energy for America Program [REAP]
   (d) Department of Transportation
       (i)     Federal Highway Administration, regarding the following programs only:
            1)  National Electric Vehicle Infrastructure [NEVI]
            2)  Charging and Fueling Infrastructure Grants [CFI] funds
   (e) Department of Interior
       (i)     Office of Surface Mining Reclamation and Enforcement
   (f) Department of Housing and Urban Development
       (i)     Office of Lead Hazard Control and Healthy Homes

If OMB is in possession of a document or documents that compile(s) the requested information in summary form, with sufficient detail to identify the agency program, grant, or loan at issue, you need not produce individual communications with the various agencies.

(2) All records created between January 20, 2025 and the date of your search for records reflecting the rationale for a decision by OMB, or by a member of its staff, to instruct an agency referenced in part (1) to temporarily or permanently withhold a disbursement or set of disbursements.

(3) Any spreadsheet or other document submitted to FFAPlans@omb.eop.gov that describes, concerns, or relates to a financial assistance program administered by one of the sub-agencies or offices listed in part (1) above.

(4) All records created between January 20, 2025 and the date of your search for records reflecting the downward adjustment to an apportionment account associated with any of the following programs:
   (a)  Department of Energy, Inflation Reduction Act ("IRA") sections:[2]
       (i)     50151 (Transmission Facility Financing)
       (ii)    50152 (Grants to Facilitate the Siting of Interstate Electricity Transmission Lines)
       (iii)   50144 (Energy Infrastructure Refinancing), 50122 (High-Efficiency Electric Home Rebates)

---

[2] All IRA section numbers refer to the Inflation Reduction Act of 2022, Pub. L. 117-169.

    (iv)    50123 (Home Energy Efficiency Contractor Training Grants)
    (v)    80003 (Tribal Electrification)
  (b) Department of Agriculture, IRA Sections
    (i)    22001 (Section 317 low-cost loan program),
    (ii)    22002 (Rural energy for America)
    (iii)    22004 (Rural cooperative grants)
  (c) Environmental Protection Agency, IRA Sections
    (i)    60105 (Grants for Air Pollution Monitoring);
    (ii)    60114 (Greenhouse Gas Air Pollution Plans and Implementation Grants; aka Climate Pollution Reduction Grants)
    (iii)    60103 (Greenhouse Gas Reduction Fund); 60201 (Environmental and Climate Justice Block Grants)
    (iv)    60107(2) (Reducing Greenhouse Gas Emissions from Electricity Production in Overburdened Communities; 60106 (Reducing Pollution at Schools)
    (v)    8001, 80002, and 80004 (Funding for Tribes and Native Hawaiians)
    (vi)    60102 (Reducing Pollution at Ports).

(5) All records created between January 20, 2025 and the date of your search for records reflecting the downward adjustment of an apportionment account associated with any of the following programs funded by the Infrastructure Investment and Jobs Act (also known as the Bipartisan Infrastructure Law) of 2021, Pub. L. 117-58.
  (a) Environmental Protection Agency
    (i)    Brownfields
    (ii)    Clean School Buses
    (iii)    Geographic Programs (e.g., Great Lakes Restoration Initiative)
    (iv)    Remedial Cleanups (Superfund)
    (v)    PFAS Drinking Water State Revolving Fund
    (vi)    PFAS Clean Water State Revolving Fund

(6) All records reflecting the rationale for any decision to make an adjustment or revision to any of the apportionment accounts referenced in part (4) or (5) above.

Please do not hesitate to contact me to clarify the scope of records requested.

## **REQUEST FOR EXPEDITED PROCESSING**

Sierra Club seeks expedited processing pursuant to 5 C.F.R. §1303.40(e)(1)(ii) and (iv) because "[t]here is an urgency to inform the public about an actual or alleged Federal Government activity," and "[t]here are possible questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence." *Id.*

The Trump Administration's Executive Order ("EO") entitled Unleashing American Energy directs federal agencies to stop disbursing funds that have been appropriated by Congress –and in many cases already committed by contract to funding recipients.[3] A subsequent OMB Memo, now withdrawn, sought to effectuate this order by freezing all federal funding.[4] These directives caused a national uproar and widespread confusion.[5] Although the Administration quickly rescinded the OMB Memo, the White House continues to point to its Executive Orders ("EOs") as the basis for broadly withholding funds that have already been appropriated by Congress, and it is clear that OMB intends to play a significant role in doing so.[6]

This request seeks to shed light on the specific programs and funding streams that may be paused or withheld by the Administration. The Inflation Reduction Act of 2022 (Public Law 117-169), and the Infrastructure Investment and Jobs Act of 2021 (Public Law 117-58) authorized a vast array of programs that improve Americans' lives with regard to their health, the environment, energy affordability, transportation, housing, schools and the reliability of the electric grid. Although Congress mandated this spending, it is now at risk as a result of the Unleashing America's Energy EO, which directs "[a]ll agencies" to "immediately pause the disbursement of funds appropriated through" these two pieces of legislation. Much of the spending has already been committed to, or designated for, state and local governments, nonprofit organizations, private businesses, public utilities, and others. And legal experts and policymakers alike have identified the Administration's attempt to delay or withhold funding as raising a Constitutional crisis.[7] There is no doubt the funding freeze and review this request seeks to examine is a matter

---

[3] Executive Order, Unleashing American Energy, Section 7(a), https://www.whitehouse.gov/presidential-actions/2025/01/unleashing-american-energy/.

[4] OMB Memorandum M-25-13 (Jan. 27, 2025) at 2 (withdrawn Jan. 29, 2025).

[5] *See, e.g.*, Canary Media, *Trump freezes funding under Inflation Reduction Act and infrastructure law* (Jan. 21, 2025), https://www.canarymedia.com/articles/policy-regulation/trump-orders-freeze-on-inflation-reduction-act-infrastructure-law-funding; S. Pettypiece et al, NBC News, *Trump's funding freeze creates widespread confusion* (Jan. 28, 2025), https://www.nbcnews.com/politics/donald-trump/trump-federal-funding-freeze-widespread-confusion-rcna189581; K. Quinlan, State Scoop, *OMB memo freezing federal funds leaves many state, local programs in limbo* (Jan. 28, 2025), https://statescoop.com/omb-memo-freezing-federal-funds-leaves-many-state-local-programs-in-limbo/; J. St. John, T. Sfondeles et al, Chicago Sun Times, *Trump's federal funding freeze on hold – as 'chaos, confusion and fear' grip Chicago* (Jan. 28, 2025), https://chicago.suntimes.com/politics/donald-trump/2025/01/28/illinois-medicaid-federal-funding-freeze-trump-administration.

[6] *See* Zolan Kanno-Youngs et al., *The freeze is rescinded, but a review to eliminate spending on 'woke' ideologies will proceed.*, New York Times (Jan. 29, 2025) (noting that EOs directing "government agencies to review and eliminate spending" remain in force), https://www.nytimes.com/live/2025/01/29/us/trump-federal-freeze-funding-news#federal-freeze-grants, *See also, e.g.*, Russell Vought, *Project 2025*, Chapter 2, https://static.project2025.org/2025_MandateForLeadership_CHAPTER-02.pdf (Russell Vought, nominated for OMB Director, advocating for political control of disbursement of funds); *A controversial idea to hand even more power to the president*, The Economist (Jan. 26, 2025), https://www.economist.com/united-states/2025/01/26/a-controversial-idea-to-hand-even-more-power-to-the-president ("Mr. Vought told senators he would follow through on Mr. Trump's vow to pursue 'impoundment'.).

[7] Nicholas Riccardi, *Trump makes moves to expand his power, sparking chos and a possible constitutional crisis*, Associated Press (Jan. 29, 2025), https://apnews.com/article/trump-presidential-power-executive-congress-grants-freeze-60fa3a9fabf6328f9aa3c45ed34e2cc3.

of urgent and widespread public interest. In addition to threatening the many benefits to the country's environment and economy conferred by the IRA and IIJA, the freeze is affecting the public's confidence in the government's ability to function and in the willingness of OMB officials to uphold the Constitution. It is urgent that the public understand what actions OMB is unilaterally taking to delay or end funding for these important programs, and why.

## DUTY TO PRESERVE RECORDS

OMB must preserve all the records requested herein while this FOIA is pending or under appeal. 5 C.F.R. §1303.80 ("OMB will not dispose of or destroy records while they are the subject of a pending request, appeal, or lawsuit under the FOIA."); *see Chambers v. U.S. Dep't of Interior,* 568 F.3d 998, 1004 (D.C. Cir. 2009) ("an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act"). Accordingly, please immediately advise custodians of potentially responsive records that the above records have been requested under FOIA and therefore may not be destroyed.

If any of the requested records are destroyed, the agency and responsible officials are subject to attorney fee awards and sanctions, including fines and disciplinary action. Courts have held federal agencies in contempt for "contumacious conduct" and ordered them to pay plaintiff's costs and fees for destroying "potentially responsive material contained on hard drives and email backup tapes." *Landmark Legal Found. v. Dep't of Interior*, 272 F.Supp.2d 59, 62 (D.D.C. 2003); *see also Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) (awarding attorneys' fees and costs because, among other factors, agency's "initial search was unlawful and egregiously mishandled and …likely responsive documents were destroyed and removed"), *aff'd in relevant part*, 470 F.3d 363, 375 (D.C. Cir. 2006) (remanding in part to recalculate attorney fees assessed). In another case, in addition to imposing a $10,000 fine and awarding attorneys' fees and costs, the court found that an Assistant United States Attorney prematurely "destroyed records responsive to [the] FOIA request while [the FOIA] litigation was pending" and referred him to the Department of Justice's Office of Professional Responsibility. *Jefferson v. Reno*, 123 F. Supp. 2d 1, 6 (D.D.C. 2000).

## EXEMPT RECORDS

Should you decide to invoke a FOIA exemption with regard to any of the requested records, please include in your full or partial denial letter sufficient information for the Sierra Club to appeal the denial. To comply with legal requirements, the following information must be included:

1. Basic factual material about each withheld item, including the originator, date, length, general subject matter, and location of each item; and

2. Explanations and justifications for denial, including the identification of the category within the governing statutory provision under which the document (or portion thereof) was withheld and a full explanation of how each exemption fits the withheld material.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in the format requested if the record is readily reproducible by the agency in that format. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B). We request that you provide electronic documents individually, and not as batched files. Specifically, for any document stored as Electronically Stored Information (ESI), we request that the document be produced in the native file type.  This includes e-mail (whether sent, received or drafted), word-processing files, tables, charts, graphs and database files, electronic calendars, proprietary software files, and spreadsheets. ESI can also be provided in the form of a load file that includes a common file type (TIFF, HTML, PDF) while maintaining access to the native file and its source data, including the ability to keyword search documents.

## RECORD DELIVERY

We appreciate a prompt determination on the requested records. As mandated by FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). Failure to comply within the statutory timeframe may result in Sierra Club filing an action in U.S. District Court to ensure timely receipt of the requested materials. You may email copies of the requested records to the following address, or arrange for other electronic transfer by contacting:

> David Abell, Managing Paralegal
> david.abell@sierraclub.org

If you are unable to deliver the documents through electronic means, please deliver the documents to:

> David Abell
> Sierra Club - Environmental Law Program
> 2101 Webster Street, Suite 1300
> Oakland, CA 94612

Please send documents on a rolling basis. OMB's search for—or deliberations concerning—certain records should not delay the production of others that OMB has already retrieved and elected to produce.

## FEE WAIVER REQUEST

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 5 C.F.R. § 1303.94. Given its role in using its expertise and

editorial skills to turn the information gathered from responsive documents into a "distinct work" and distribute that work to an audience, Sierra Club satisfies the definition of a "representative of the news media," 5 U.S.C. §1303.94(h), but it also independently meets each of the factors for a public interest fee waiver request, as described below.

Sierra Club is the nation's oldest grassroots organization and a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA.[8]

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

As explained below, this FOIA request satisfies the factors listed in OMB's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 5 C.F.R. §1303.94.

1. **The subject matter of the requested records specifically concerns identifiable "operations and or activities of the Federal government."**

The requested records relate to the communications of OMB personnel, which reflect the activities and work of these personnel on behalf of the agency, and their instructions to other agencies that will affect how those agencies allocate federal funding. By their very definition, the records concern "identifiable operations or activities of the government." 5 C.F.R. §1303.94(b)(1).

---

[8] For example, *see* FOIA Request Reference No. EPA-HQ-2017-008568 (fee letter waiver received June 28, 2017).

**2.  The disclosure of the requested documents "likely to contribute significantly to public understanding of those operations or activities."**

Disclosure of the requested records will allow Sierra Club to convey information to the public about the funding that is temporarily or permanently withheld per OMB's instructions, and the rationale for the withholding of federal funds.

Once the requested records are made available, Sierra Club will analyze them and present its findings to its members and the general public in a manner that will meaningfully enhance the public's understanding of OMB's actions to withhold federal funding. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of OMB's operations and the implications for federal activities at other agencies.

The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request. OMB has not provided any detail to the public as to the specific effects of its funding freeze, the rationales for freezing particular programs, or the results of its review of specific programs, as sought by this request.

**3.  The disclosure would contribute to the understanding of a broad audience, as opposed to the individual understanding of the requester or a narrow segment of interested persons.**

Sierra Club has longstanding experience and expertise in the subject area of the FOIA requests, including issues related to renewable energy, air quality, water quality, electric vehicles, mining pollution, industrial decarbonization, residential energy efficiency, distributed solar energy, environmental justice, and other areas funded by the IRA and IIJA.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, including: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives over 15 million page views by 5,492,373 users; on average, the site gets 39,000 visits per day. *Sierra* is a magazine with a printed circulation of approximately 440,000 copies. An additional 50,000 Sierra Club members receive a "tree-free" digital replica edition. Sierra publishes online daily at www.sierramagazine.org and reaches about 125,000 readers a month, most of whom are not Sierra Club members or supporters. Sierra Club Insider, an electronic newsletter, is sent to over 2.2 million people twice a month.[9]

---

[9] These facts support Sierra Club's classification as a "representative of the news media" for purposes of assigning a fee category, at a minimum. 5 C.F.R. §1303.90(h). However, Sierra Club also seeks a full fee waiver pursuant to the public interest factors outlined in 5 C.F.R. §1303.984. The figures in this paragraph were last updated in July 2024, but remain similar.

Sierra Club intends to share the information received from this FOIA request with the public at large, our members, the media and our allies who share a common interest in the funding programs noted above. As Sierra Club has both worked extensively on the policy and program areas at issue in this request, and also has its own media channels, it unquestionably has "expertise in the subject area" and "ability and intention to effectively convey information to the public." As a result, Sierra Club satisfies 5 C.F.R. §1303(b)(2)(ii).

**4. The requester has no commercial interest that would be furthered by the requested disclosure.[10]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that furthers a "commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that OMB waive all search and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because, as detailed above, the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. In the event that fees are ultimately assessed, please do not incur expenses beyond $250 without first contacting me for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply.

Sincerely,

Elena Saxonhouse
Managing Attorney
Sierra Club Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5765
elena.saxonhouse@sierraclub.org.

---

[10] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

# EXHIBIT B

7/1/25, 12:48 PM     Sierra Club Mail - Fwd: ACK – OMB FOIA REQUEST 2025-609 - RE: [EXTERNAL] FOIA Request re Funding Review

Case 3:25-cv-05732-LJC   Document 1-1   Filed 07/08/25   Page 12 of 58



Joya Manjur <joya.manjur@sierraclub.org>

---

## Fwd: ACK – OMB FOIA REQUEST 2025-609 - RE: [EXTERNAL] FOIA Request re Funding Review

**Joya Manjur** <joya.manjur@sierraclub.org>                          Tue, Jul 1, 2025 at 12:48 PM
To: Joya Manjur <joya.manjur@sierraclub.org>

From: **MBX OMB FOIA** <MBX.OMB.FOIA@omb.eop.gov>
Date: Mon, Jun 9, 2025 at 9:33 AM
Subject: FW: ACK – OMB FOIA REQUEST 2025-609 - RE: [EXTERNAL] FOIA Request re Funding Review
To: elena.saxonhouse@sierraclub.org <elena.saxonhouse@sierraclub.org>
CC: MBX OMB FOIA <MBX.OMB.FOIA@omb.eop.gov>


Dear Elena Saxonhouse,


Thank you for inquiring about the status of your Freedom of Information Act (FOIA) request submitted to the Office of Management and Budget (OMB) on January 30, 2025 and assigned tracking number 2025-609.  We appreciate you reaching out to us.  OMB is doing its best to process each FOIA request as quickly as possible in the order they are received.  We ask for your patience as OMB is experiencing a significant increase in new FOIA matters and a shortage of FOIA processors.  As of today, your FOIA request sits at number 1,390 out of a total of more than 2,120 requests in our backlog queue.  Based on your place in the backlog queue, our best estimate at this time for completing the processing of your FOIA request is 36-48 Months.  For additional updates, we ask that you check back in with us periodically.  Your understanding and patience are greatly appreciated.


Sincerely,

OMB's FOIA Team

---

**From:** Elena Saxonhouse <elena.saxonhouse@sierraclub.org>
**Sent:** Tuesday, May 6, 2025 2:04 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>; Sanghyun Lee <slee@environmentalintegrity.org>
**Subject:** Re: ACK – OMB FOIA REQUEST 2025-609 - RE: [EXTERNAL] FOIA Request re Funding Review


Dear OMB FOIA team,

I am checking back in as I did not receive a response to my message below, sent two months ago. Can you please provide an update and expected completion date for OMB FOIA Request 2025-609? Thank you,


Elena Saxonhouse (she/her)

Managing Attorney

Sierra Club Environmental Law Program

2101 Webster Street, Suite 1300

Oakland, CA 94612

(415) 977-5765

On Wed, Mar 5, 2025 at 8:00 AM Elena Saxonhouse <elena.saxonhouse@sierraclub.org> wrote:

Dear OMB FOIA team:

Thank you for acknowledging receipt of this request on January 30, 2025. Although the agency's statutory deadline to respond within 20 business days has now passed, I have not received any further correspondence about the request. Can you please provide an estimated date by which OMB will provide the requested documents? Please feel free to reach me by phone or by email if you need any further information to process the request. Thank you,

Elena Saxonhouse (she/her)

Managing Attorney

Sierra Club Environmental Law Program

2101 Webster Street, Suite 1300

Oakland, CA 94612

(415) 977-5765

On Thu, Jan 30, 2025 at 1:59 PM MBX OMB FOIA <MBX.OMB.FOIA@omb.eop.gov> wrote:

Hello Ms. Saxonhouse:

This email acknowledges receipt of your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated and received in this office on **January 30, 2025**. Your request has been logged in and is being processed. For your reference, the OMB FOIA number is 2025-609.

Thank you,

OMB FOIA Team

**From:** Elena Saxonhouse <elena.saxonhouse@sierraclub.org>
**Sent:** Thursday, January 30, 2025 2:02 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Subject:** [EXTERNAL] FOIA Request re Funding Review


Please see attached FOIA request and kindly acknowledge receipt. Thank you,


Elena Saxonhouse (she/her)

Managing Attorney

Sierra Club Environmental Law Program

2101 Webster Street, Suite 1300

Oakland, CA 94612

(415) 977-5765

# EXHIBIT C

Case 3:25-cv-05732-JJC   Document 1-1   Filed 07/08/25   Page 16 of 58



**Joya Manjur <joya.manjur@sierraclub.org>**

---

# Fwd: Automatic reply: ACK – OMB FOIA REQUEST 2025-609 - RE: [EXTERNAL] FOIA Request re Funding Review

**Joya Manjur** <joya.manjur@sierraclub.org>                              Tue, Jul 1, 2025 at 1:03 PM
To: Joya Manjur <joya.manjur@sierraclub.org>

From: **MBX OMB FOIA** <MBX.OMB.FOIA@omb.eop.gov>
Date: Tue, May 6, 2025 at 11:10 AM
Subject: Automatic reply: ACK – OMB FOIA REQUEST 2025-609 - RE: [EXTERNAL] FOIA Request re Funding Review
To: Elena Saxonhouse <elena.saxonhouse@sierraclub.org>

This is a system-generated reply. The Office of Management and Budget has received the information you submitted to the OMBFOIA@omb.eop.gov mailbox and through the FOIA.gov portal.  We will provide further information where appropriate.


Please note that the U.S. Department of Government Efficiency is not a component of the Office of Management and Budget (OMB).  Pursuant to Executive Order (E.O.) 14158 of January 20, 2025, "Establishing and Implementing the President's 'Department of Government Efficiency,'" the United States Digital Service was publicly renamed and reformed as the United States DOGE Service (USDS) and was established in the Executive Office of the President. As a result, any USDS records created on or after January 20, 2025, are not within the legal custody and control of OMB. OMB does not process FOIA requests on behalf of USDS.


Thank you,

OMB's FOIA Office

# EXHIBIT D



888 17th St. NW, Suite 810
Washington, DC 20006
Main: 202-296-8800
Fax: 202-296-8822
environmentalintegrity.org

January 30, 2025

***Submitted via e-mail to*** [OMBFOIA@omb.eop.gov](mailto:OMBFOIA@omb.eop.gov)

FOIA Officer
Office of Management and Budget
725 17th Street NW
Washington, DC 20503

> **RE:    Freedom of Information Act Request for Records Related to the January 27, 2025 Memoranda M-25-13 Regarding the Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs**

Dear FOIA Officer,

On January 27, 2025, the Office of Management and Budget ("OMB") published Memorandum M-25-13 from Matthew J. Vaeth, Acting Director of OMB, to all heads of federal executive departments and agencies entitled "Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs."[1] The memorandum directed that all Federal agencies review all Federal financial assistance, excluding assistance provided directly to individuals, to ensure that the supporting activities are consistent with a number of the Administration's recent executive orders, and instituted a temporary pause of all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that became effective on January 28, 2025 at 5:00 PM. OMB rescinded the memo on January 29, 2025.

**Records Requested**

Pursuant to the Freedom of Information Act ("FOIA" or "Act"), 5 U.S.C. § 552 et seq., the Environmental Integrity Project ("EIP") and the Sierra Club request the following record(s) in the possession, control, or custody of the Office of Management and Budget related to the Memorandum described above:

1. Any and all records exchanged between OMB and any third parties between November 6, 2024 and present related to the January 27 memorandum M-25-13 described above.

2. Any and all records exchanged between OMB and any third parties between November 6, 2024 and present related to a temporary pause of agency grant, loan, and other financial assistance programs.

---

[1] A copy of this memorandum is available online at:
[https://static01.nyt.com/newsgraphics/documenttools/da3a3829590efbb7/b0c025ff-full.pdf.](https://static01.nyt.com/newsgraphics/documenttools/da3a3829590efbb7/b0c025ff-full.pdf.)

## Definition of Key Terms

"OMB" includes all employees of OMB, including heads and directors, acting directors, and temporary staff.

"Third party" means any person who is not an employee of the federal government.

"Records" means information of any kind, including, but not limited to, documents (handwritten, typed, electronic of otherwise produced, reproduced, or stored), letters, e-mails, text messages, facsimiles, memoranda, correspondence, notes, databases, drawings, graphs, photographs, minutes of meetings, electronic records of meetings, and any other compilation of data from which information can be obtained.

"Related to" means constituting, reflecting, respecting, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, or relevant to.

## Format of Records

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B)("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

Please provide all records in an electronic .pdf format that is text-searchable and OCR-formatted. Portfolios and embedded files within files are not readily accessible. Please do not provide the records in a single, or "batched,".PDF file format.

## Duty to Preserve Records

OMB must preserve all the records requested herein while this FOIA is pending or under appeal. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009) ("an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act"). Please immediately advise custodians of potentially responsive records that the above records have been requested under FOIA and therefore may not be destroyed.

If any of the requested records are destroyed, the agency and responsible officials are subject to sanctions, including fines and disciplinary action, and payment of plaintiff's costs and fees. *See. e.g.*, *Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) (awarding attorneys' fees and costs because, among other factors, agency's "initial search was unlawful and egregiously mishandled and …likely responsive documents were destroyed and removed"), *aff'd in relevant part*, 470 F.3d 363, 375 (D.C. Cir. 2006) (remanding in part to recalculate attorney fees assessed).

2

**Claims of Exemption from Disclosure**

Should you decide to invoke a FOIA exemption with regard to any of the requested records, please include in your full or partial denial letter sufficient information for EIP to appeal the denial. To comply with legal requirements, the following information must be included:

1. Basic factual material about each withheld item, including the originator, date, length, general subject matter, and location of each item; and

2. Explanations and justifications for denial, including the identification of the category within the governing statutory provision under which the document (or portion thereof) was withheld and a full explanation of how each exemption fits the withheld material.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

**Fee Waiver Request**

Pursuant to FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and OMB's implementing regulations, 5 C.F.R. § 1303.94, we respectfully request that all charges incurred in connection with this FOIA request be waived. FOIA requires agencies to waive or reduce fees for requests "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). "[A]ll public interest groups…will be able to qualify for fee waivers and thereby obtain documents without charge if their requests meet the standard for waivers." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. 29,696 (1986) (statement of Rep. English)). Congress intended the fee waiver provision to be "liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quoting 132 Cong. Rec. 27,190 (1986) (statement of Sen. Leahy)).

Given their roles in using their expertise and editorial skills to turn the information gathered from responsive documents into a "distinct work" and distribute that work to an audience, both Environmental Integrity Project and the Sierra Club satisfy the definition of a "representative of the news media." 5 U.S.C. §1303.94(h). However, as discussed below, this FOIA request also independently satisfies the two-pronged test for a fee waiver established in FOIA and outlined in OMB's implementing regulations because: (i) "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government," and (ii) disclosure of the information "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 5 C.F.R. § 1303.94(a)-(b).

**A.    Disclosure of the requested information is in the public interest because it will contribute significantly to public understanding of the operations or activities of government.**

Requesters qualify for the fee waiver because the requested information will "contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). Specifically, our request meets each of the three factors that OMB considers with respect to the "public understanding" prong. *See* 5 C.F.R. § 1303.94(b)(1)-(2).

**Factor 1. Whether disclosure of the requested information would shed light on the operations or activities of the government.** The subject of the request must concern identifiable operations or activities of the Federal Government with a connection that is direct and clear, not remote or attenuated.

This request seeks records related to the operations or activities of the OMB, an executive agency of the federal government, regarding the promulgation of a memorandum issued to all heads of federal executive departments and agencies, which effectively paused all activities related to federal grants, loans, and financial assistance programs. The memorandum is unquestionably a government action of national scope and effect, and the request for records has a direct and clear connection to this memorandum.

**Factor 2. The informative value of the information to be disclosed**: Whether the disclosure is "likely to contribute significantly" to an understanding of government operations or activities. The disclosable portions of the requested records must be meaningfully informative about government operations or activities. The disclosure of information that already is in the public domain, in either the same or a substantially identical form, would not be meaningfully informative if nothing new would be added to the public's understanding.

The principal purpose of this request is to better understand what communications, if any, that staff of OMB may have had with third parties outside of the Federal government regarding the development and implementation of this memorandum. The information sought is not otherwise in the public domain.

**Factor 3. The contribution to an understanding of the subject by the public is likely to result from disclosure**: Whether disclosure of the requested information will contribute to "public understanding." The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area as well as the requester's ability and intention to effectively convey information to the public must be considered.

OMB attempted to put in place a pause on all activities related to federal grants, loans, and financial assistance programs through the memorandum, which had immediate and significant consequences nation-wide. Information regarding the potential involvement of any third parties in the formulation and issuance of this memorandum is crucial to inform the public's understanding of this policy, which EIP and Sierra Club intend to share with interested members of the public as well as to the media for broad public understanding of those actions.

EIP is a non-profit, non-partisan organization that advocates for clean air and clean water, government accountability, and the effective enforcement of environmental laws. EIP is actively engaged in educating the public about environmental and public health issues, and frequently uses information it obtains through FOIA requests to analyze and simplify information for public distribution on government operations, environmental, and public health topics. EIP has a long, demonstrated, and continuing history of expertise and contribution to the public understanding on a number of topics pertaining to governmental operations and the environment. In furtherance of this, EIP distributes information via regularly published articles, reports, and press releases, its frequently updated website (http://www.environmentalintegrity.org) and social media platforms, communication with partner organizations and outside media outlets, and legal and administrative documents such as public comments on agency rulemakings and permits and briefs and documents filed in litigation.

Sierra Club has longstanding experience and expertise in the subject area of the FOIA requests, including issues related to renewable energy, air quality, water quality, electric vehicles, mining pollution, industrial decarbonization, residential energy efficiency, distributed solar energy, environmental justice, and other areas funded by the IRA and IIJA. Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, including: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives over 15 million page views by 5,492,373 users; on average, the site gets 39,000 visits per day. *Sierra* is a magazine with a printed circulation of approximately 440,000 copies. An additional 50,000 Sierra Club members receive a "tree-free" digital replica edition. Sierra publishes online daily at www.sierramagazine.org and reaches about 125,000 readers a month, most of whom are not Sierra Club members or supporters. Sierra Club Insider, an electronic newsletter, is sent to over 2.2 million people twice a month.[2]

As they have done in the past, EIP and Sierra Club plan to share the records and our findings from this FOIA request with the general public, elected officials and policy makers, our partner organizations for further dissemination to their members, and to national and local media sources. Thus, requesters have the ability, intention, and specialized knowledge to disseminate the information in a manner that contributes to the understanding of the "public-at-large".

  **B.**  **Disclosure of the information "is not primarily in the commercial interest of the requester."**

As to FOIA's second prong for fee waivers—disclosure of the information "is not primarily in the commercial interest of the requester"—OMB regulations set out two factors for the agency to consider. *See* 5 C.F.R. § 1303.94(b)(3). This request clearly meets both of these factors.

  **Factor 4. The existence and magnitude of a commercial interest**: Whether the requester has a commercial interest that would be furthered by the requested disclosure. A

---

[2] The figures in this paragraph were last updated in July 2024, but remain similar.

commercial interest includes any commercial, trade, or profit interest. Requesters must be given an opportunity to provide explanatory information regarding this consideration.

The information delivered in response to this request will not be used for any commercial purpose, business, trade, or profit. The requesters are both public interest organizations that have no commercial interest in this material.

      **Factor 5. The primary interest in disclosure**: If there is an identified commercial interest, OMB must determine whether that is the primary interest furthered by the request. A waiver or reduction of fees is justified when the requirements of paragraphs (b)(1) and (2) of this section are satisfied and any commercial interest is not the primary interest furthered by the request. OMB ordinarily will presume that when a news media requester has satisfied the requirements of paragraphs (b)(1) and (2) of this section, the request is not primarily in the commercial interest of the requester. Disclosure to data brokers or others who merely compile and market government information for direct economic return will not be presumed to primarily serve the public interest.

EIP has no commercial interest in disclosing the records sought. EIP's interest in this material is a public interest in obtaining and disseminating important information regarding a significant government action with national scope and impact. Similarly, Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that furthers a "commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

For the above reasons, this request satisfies the fee waiver standards set forth under 5 C.F.R. § 1303.94. In the event that OMB does not grant the requested waiver, please provide information concerning the specific basis for such a decision as required by OMB regulations as well as an estimate of the cost of the agency's response.

Thank you for your prompt attention to this matter. Should you need further information or have any questions concerning this request or that would allow you to clarify or limit this request, please do not hesitate to contact me.

                Respectfully submitted,

                /s/ Sanghyun Lee
                Sanghyun Lee
                Attorney
                Environmental Integrity Project
                888 17th Street NW, Suite 810
                Washington, DC 20006
                (202) 263-4441
                SLee@environmentalintegrity.org

# EXHIBIT E



Joya Manjur <joya.manjur@sierraclub.org>

---

## Fwd: ACK – OMB FOIA REQUEST 2025-615 - RE: FOIA Request RE: Memorandum M-25-13

**Joya Manjur** <joya.manjur@sierraclub.org>      Tue, Jul 1, 2025 at 12:32 PM
To: Joya Manjur <joya.manjur@sierraclub.org>

From: **Sanghyun Lee** <slee@environmentalintegrity.org>
Date: Fri, Mar 14, 2025 at 1:14 PM
Subject: RE: ACK – OMB FOIA REQUEST 2025-615 - RE: FOIA Request RE: Memorandum M-25-13
To: MBX OMB FOIA <MBX.OMB.FOIA@omb.eop.gov>
Cc: Elena Saxonhouse <elena.saxonhouse@sierraclub.org>, Courtney Bernhardt <cbernhardt@environmentalintegrity.org>

Hello,

I am following up on my March 4, 2025 email below to once again request an update on the status of this request.

The 20-day statutory deadline for the Agency's response to this request passed on March 3. I have not received a response or any update at all regarding this request, and also never received a response to my March 4 email requesting a status update. Please provide me with an update on the status of this request, as well as an estimated date by which OMB will produce the records requested, ASAP.

Thank you in advance.

All best,

Sunny

Attorney

Environmental Integrity Project

888 17th Street NW, Suite 810

Washington, DC 20006

(202) 263-4441

---

**From:** Sanghyun Lee
**Sent:** Tuesday, March 4, 2025 3:19 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Cc:** Elena Saxonhouse <elena.saxonhouse@SIERRACLUB.ORG>; Courtney Bernhardt <cbernhardt@environmentalintegrity.org>
**Subject:** RE: ACK – OMB FOIA REQUEST 2025-615 - RE: FOIA Request RE: Memorandum M-25-13

Hello,

I received the notice below that my FOIA request No. 2025-615 was received by OMB on January 31, 2025.

The 20 working-day response deadline passed yesterday (March 3). However, I have not yet received a response or any further updates regarding this request. Can you please provide me with an update on the status of this request, as well as an estimated date by which OMB will produce the records requested?

Thank you in advance, and please do not hesitate to contact me if you have any questions about this request.

All best,

Sunny

Attorney

Environmental Integrity Project

888 17th Street NW, Suite 810

Washington, DC 20006

(202) 263-4441

---

**From:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Sent:** Friday, January 31, 2025 1:01 PM
**To:** Sanghyun Lee <slee@environmentalintegrity.org>; MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Cc:** Jennifer Duggan <jduggan@environmentalintegrity.org>; Elena Saxonhouse <elena.saxonhouse@SIERRACLUB.ORG>; Courtney Bernhardt <cbernhardt@environmentalintegrity.org>
**Subject:** ACK – OMB FOIA REQUEST 2025-615 - RE: FOIA Request RE: Memorandum M-25-13

Hello Mr. Lee:

This email acknowledges receipt of your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated and received in this office on **January 31, 2025**. Your request has been logged in and is being processed. For your reference, the OMB FOIA number is 2025-615.

Thank you,

OMB FOIA Team

---

**From:** Sanghyun Lee <slee@environmentalintegrity.org>
**Sent:** Thursday, January 30, 2025 6:16 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Cc:** Jennifer Duggan <jduggan@environmentalintegrity.org>; Elena Saxonhouse <elena.saxonhouse@SIERRACLUB.ORG>; Courtney Bernhardt <cbernhardt@environmentalintegrity.org>
**Subject:** [EXTERNAL] FOIA Request RE: Memorandum M-25-13


Dear FOIA Officer,


The Environmental Integrity Project and the Sierra Club respectfully submit this request under the Freedom of Information Act seeking disclosure of records relating to OMB's Memorandum M-25-13 (Jan. 27, 2025) and the temporary pause of agency grants, loans, and other financial assistance programs.


Please see the attached request, which describes the specific records sought in further detail. Our request includes a request for fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 5 C.F.R. § 1303.94.


If you need any clarification, or if I can assist with anything else, please feel free to contact me anytime at (202) 263-4441 or slee@environmentalintegrity.org. Thank you in advance.


All best,

Sunny


Attorney

Environmental Integrity Project

888 17th Street NW, Suite 810

Washington, DC 20006

(202) 263-4441

# EXHIBIT F



Joya Manjur <joya.manjur@sierraclub.org>

## Seeking clarification re FOIA submissions to DOGE, USDS, and U.S. DOGE Service Temporary Organization

**Joya Manjur** <joya.manjur@sierraclub.org>                                    Tue, Jul 8, 2025 at 3:54 PM
To: Joya Manjur <joya.manjur@sierraclub.org>

From: **MBX OMB FOIA** <MBX.OMB.FOIA@omb.eop.gov>
Date: Fri, Feb 14, 2025 at 8:01 AM
Subject: RE: [EXTERNAL] Seeking clarification re FOIA submissions to DOGE, USDS, and U.S. DOGE Service
Temporary Organization
To: Joya Manjur <joya.manjur@sierraclub.org>, MBX OMB FOIA <MBX.OMB.FOIA@omb.eop.gov>
Cc: Elena Saxonhouse <elena.saxonhouse@sierraclub.org>

Dear Ms. Manjur:

Thank you for your email. You can submit a FOIA request to OMB either via email at
OMBFOIA@omb.eop.gov or via the government-wide FOIA portal at
https://www.foia.gov/.

Respectfully,

OMB's FOIA Team

**From:** Joya Manjur <joya.manjur@sierraclub.org>
**Sent:** Thursday, February 13, 2025 7:14 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Cc:** Elena Saxonhouse <elena.saxonhouse@sierraclub.org>
**Subject:** [EXTERNAL] Seeking clarification re FOIA submissions to DOGE, USDS, and U.S. DOGE Service Temporary
Organization

Good afternoon,

I am reaching out on behalf of the Sierra Club, pursuant to 5 CFR § 1303.20, to seek clarification about how to submit a
FOIA request to the Department of Government Efficiency ("DOGE"), the U.S. DOGE Service ("USDS") (formerly U.S.
Digital Service), and the U.S. DOGE Service Temporary Organization. It is my understanding that personnel associated
with these three entities were operating within OMB, but at some point may have begun operating within a different

7/8/25, 3:54 PM                    Sierra Club Mail - Seeking clarification on FOIA submissions to DOGE, USDS, and U.S. DOGE Service Temporary Organization

Case 3:25-cv-05732-LJC    Document 1-1    Filed 07/08/25    Page 30 of 58

component of the Executive Office of the President ("EOP").

Does the EOP have a separate FOIA officer handling requests to DOGE, USDS, and U.S. DOGE Service Temporary Organization, or is the OMB FOIA officer still the best point of contact for FOIA requests seeking records for these entities up through the present date? I have been unable to identify any publicly available information describing the process for submitting requests for these entities' records.

Thank you,
Joya Manjur



**Joya Manjur**
**Associate Attorney**
**Sierra Club Environmental Law Program**
**Pronouns: she/her**
**(415) 977 5638** | Pacific Time
joya.manjur@sierraclub.org

CONFIDENTIAL LEGAL COMMUNICATION/WORK PRODUCT

This email may contain privileged and confidential communications and/or confidential attorney work product. If you receive this email inadvertently, please reply and notify the sender and delete all versions from your system. Thank you.

# EXHIBIT G



February 24, 2025

***Via E-mail (OMBFOIA@omb.eop.gov)***

FOIA Officer
Office of Management and Budget
725 17th Street NW, Room 9272
Washington, DC 20503

**Re:    Freedom of Information Act Request: OMB and DOGE Personnel External
        Communications**

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"),
from the Sierra Club, a nonprofit organization with more than 600,000 members nationwide
dedicated to preserving the natural and human environment.

## REQUESTED RECORDS

Sierra Club requests the following records[1] in the possession, custody, or control of the Office of
Management and Budget ("OMB"), or in the possession, custody, or control of personnel
associated with the Department of Government Efficiency, U.S. DOGE Service (formerly U.S.
Digital Service), or U.S. DOGE Service Temporary Organization:[2]

---

[1] "Records" means information of any kind, including writings (handwritten, typed, electronic or otherwise
produced, reproduced or stored), letters, memoranda, correspondence, notes, applications, completed forms, studies,
reports, reviews, guidance documents, policies, telephone conversations, telefaxes, emails, documents, databases,
drawings, graphs, charts, photographs, minutes of meetings, recordings of meetings, and any other compilation of
data from which information can be obtained.

[2] The Executive Order entitled Establishing and Implementing the President's "Department of Government
Efficiency" (Jan. 20, 2025) purported to rename the United States Digital Service, an entity within the Office of
Management and Budget, to the United States DOGE Service (USDS) and establish it within the Executive Office of
the President, with an Administrator reporting to the White House Chief of Staff. The Executive Order also
purports to establish within USDS a "U.S. DOGE Service Temporary Organization," and orders Agency heads to
establish "DOGE Teams" that may include Special Government Employees.  This request seeks records in the
possession or control of USDS, including the U.S. DOGE Service Temporary Organization, and any members of
"DOGE Teams" operating out of the Executive Office of the President (collectively "DOGE").

A.  <u>For the time period starting from January 20, 2025, through the date of your search for records in response to this request:</u>

   1.  All email communications between OMB Director Russel Vought, or anyone serving as his chief of staff, secretary, scheduler, or assistant, and any email account ending in the domain names listed in Attachment A;[3]

   2.  All email communications between OMB General Counsel Mark Paoletta and any email account ending in the domain names listed in Attachment A;

   3.  All text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) between Director Vought, or anyone serving as his chief of staff, secretary, scheduler, or assistant, and any representatives of the entities listed in Attachment A;

   4.  All text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) between Mark Paoletta and any representatives of the entities listed in Attachment A;

   5.  All calendars, whether electronic or in paper format, of Director Vought; and

   6.  All emails, text messages, calendars, or other forms of communication that fit the above specifications and have been deleted, but remain recoverable in any way. If fulfilling this specification requires additional time, we ask that production of documents meeting specifications 1-5 be given priority and processed separately from any potential responsive records to this specification.

B.  <u>For the time period starting from November 12, 2024 through January 19, 2025, and the following individuals (hereinafter "DOGE Personnel")[4]:</u>

---

[3] When this request refers to communications "between" various parties, this is intended to include emails or other messages where the OMB individual and Attachment A entities are cc'ed or bcc'ed, even if neither the OMB individual nor the Attachment A entity is the primary recipient or sender. In other words, to perform an adequate search, the agency should search "cc" and "bcc" fields as well as the "to" and "from" fields.

[4] Due to the lack of transparency about the organization of DOGE, we don't have clear information about its personnel. We understand from media reporting that the people listed have been working for DOGE out of the OMB office. This request encompasses any records of these personnel in OMB's possession, whether the personnel are full-time employees, temporary employees, "special government employees," or volunteers. We understand that some or all of the people listed may be working out of the Executive Office of the President ("EOP") now; if OMB is not the custodian of the requested records, please direct us to the appropriate custodian.

    a.  Elon Musk

    b.  Anyone serving as Elon Musk's secretary, scheduler, or administrative assistant

    c.  Akash Bobba

    d.  Edward Coristine

    e.  Luke Farritor

    f.  Gautier Cole Killian

    g.  Gavin Kliger

    h.  Ethan Shaotran

    i.  Tom Krause

    j.  Riccardo Biasini

    k.  Amanda Scales

    l.  Thomas Shedd

    m.  Kendall Lindemann

    n.  Kyle Schutt

    o.  Austin Raynor

    p.  Ryan Riedal

    q.  Marko Elez

    r.  Katie Miller

    s.  Brad Smith

    t.  Steve Davis

1. All email communications between any of the DOGE Personnel and any email account ending in the domain names listed in Attachment A[5];

2. All text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) between any of the DOGE Personnel and any representatives of the entities listed in Attachment A;

3. All calendars, whether electronic or in paper format, of Elon Musk and;

4. All emails, text messages, calendars, or other forms of communication that fit the above specifications and have been deleted, but remain recoverable in any way. If fulfilling this specification requires additional time, we ask that production of documents meeting specifications 1-3 be given priority and processed separately from any potential responsive records to this specification.

---

[5] As outlined above, *supra* note 3, communications "between" DOGE individuals and Attachment A entities include those where the DOGE individual and Attachment A entity are each on a communication as either the sender, recipient, or a cc'ed or bcc'ed recipient.

C. <u>For the time period starting from January 20, 2025, through the date of your search for records in response to this request:</u>

1. All email communications between any of the DOGE Personnel and any email account ending in the domain names listed in Attachment A;

2. All text messages or messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) between any of the DOGE Personnel and any representatives of the entities listed in Attachment A;

3. All calendars, whether electronic or in paper format, of Elon Musk and;

4. All emails, text messages, calendars, or other forms of communication that fit the above specifications and have been deleted, but remain recoverable in any way. If fulfilling this specification requires additional time, we ask that production of documents meeting specifications 1-3 be given priority and processed separately from any potential responsive records to this specification.

This request includes communications that are or were on any system or device, computer, phone, smartphone, tablet, email account, cloud, server, or other communication system either **personal or business** that is or was owned or operated by the OMB or DOGE Personnel listed above or otherwise established for the purposes of communicating with those individuals. This request includes all emails, text messages, or other communications from any **personal** account operated by the OMB or DOGE Personnel listed above which have been forwarded into an OMB or DOGE government email account.

This request applies to all email accounts assigned to or operated by the OMB or DOGE personnel listed above, whether on an official OMB or DOGE email address or server or not, that relate to official business of OMB or DOGE. This request applies to so-called "alias" email accounts that may or may not include the name(s) of the OMB or DOGE personnel in the email address.

While the Executive Order purporting to establish the DOGE entities states that they are housed within the Executive Office of the President ("EOP") and that their personnel report up to the White House Chief of Staff, this arrangement does not automatically shield the DOGE personnel's records from release.[6] **If you are not the correct contact for the full scope of**

---

[6] *See* 5 U.S.C. § 551(1) (definition of "agency"); 5 U.S.C. § 552(f)(2) (definition of "record"); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 156 (1980).

agency records created or maintained by the individuals listed above—including those purporting to be working on behalf of the DOGE entities out of an EOP office external to OMB—please inform us of that upon acknowledging receipt of the request, and either provide us with the correct contact or forward the request to the appropriate component of EOP directly. Sierra Club has made a good faith effort to determine the proper process to submit a FOIA request for records of DOGE personnel.[7] DOGE has made none available, despite Elon Musk's assertion that "all of DOGE's actions are maximally transparent."[8]

Please do not hesitate to contact me to clarify the scope of records requested.

## REQUEST FOR EXPEDITED PROCESSING

Sierra Club seeks expedited processing pursuant to 5 C.F.R. §1303.40(e)(1)(ii) and (iv) because "[t]here is an urgency to inform the public about an actual or alleged Federal Government activity," and "[t]here are possible questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence." *Id.*

In late January 2025, OMB issued a memo freezing all federal funding, based on the Trump Administration's Executive Order ("EO") entitled Unleashing American Energy, which directs federal agencies to stop disbursing funds that have been appropriated by Congress.[9] OMB rescinded the memo two days later, after multiple lawsuits challenging the funding freeze were filed, but the Administration, including OMB Director Russel Vought, continues to advocate for broadly withholding funds.[10] Despite court orders blocking the funding freeze, federal funds have remained on hold in several instances, which has caused national uproar and widespread confusion.[11] OMB plays a significant role in the funding freeze, and this request seeks

---

[7] Sierra Club staff emailed the OMB FOIA Public Liaison asking about the appropriate contact or office for submitting a FOIA request for records of DOGE personnel, but the Public Liaison's response did not provide clarification.

[8] Matt Novak, Elon Musk Claims the DOGE Website Offers Transparency, but There's Nothing There, Gizmodo (February 15, 2025), https://gizmodo.com/elon-musk-claims-the-doge-website-offers-transparency-but-theres-nothing-there-2000562659

[9] Executive Order, Unleashing American Energy, Section 7(a), https://www.whitehouse.gov/presidential-actions/2025/01/unleashing-american-energy/.

[10] See Zolan Kanno-Youngs et al., The freeze is rescinded, but a review to eliminate spending on 'woke' ideologies will proceed., N.Y. Times (Jan. 29, 2025) (noting that EOs directing "government agencies to review and eliminate spending" remain in force), https://www.nytimes.com/live/2025/01/29/us/trump-federal-freeze-funding-news#federal-freeze-grants, *See also, e.g.*, Russell Vought, Project 2025, Chapter 2, https://static.project2025.org/2025_MandateForLeadership_CHAPTER-02.pdf (Russell Vought, OMB Director, advocating for political control of disbursement of funds); A controversial idea to hand even more power to the president, The Economist (Jan. 26, 2025), https://www.economist.com/united-states/2025/01/26/a-controversial-idea-to-hand-even-more-power-to-the-president ("Mr. Vought told senators he would follow through on Mr. Trump's vow to pursue 'impoundment'.).

[11] *See* Melissa Quinn, Judge directs Trump officials to comply with earlier order halting funding freeze, CBS News (Feb. 10, 2025), *https://www.cbsnews.com/news/judge-directs-trump-administration-comply-with-funding-freeze-halt/; see also* Max Kozlov, Revealed: NIH research grants still frozen despite lawsuits challenging Trump order, Nature (Feb. 20, 2025), https://www.nature.com/articles/d41586-025-00540-2.

information about how it is being influenced by external parties.

On January 20, 2025, President Trump issued an EO establishing the Department of Government Efficiency, "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity" and renaming the United States Digital Service within OMB to the United States DOGE Service ("USDS").[12] Led by Elon Musk, DOGE has made a series of major, unprecedented changes to the federal government in the name of cost-cutting and efficiency, several of which courts have already found unlawful. DOGE and the White House have fired or laid off thousands of federal employees[13] and suspended federal funding with no transparency, despite court orders blocking the Administration's funding freeze.[14]

For instance, Elon Musk directed the reduction of workforce and freezing of funds at USAID, which has impacted humanitarian aid programs around the world and has been described as an "extinction-level event" for the international humanitarian sector.[15] DOGE also cut $881 million in research contracts at the Department of Education's Institute of Education Sciences.[16] In recent weeks, DOGE staff have accessed the offices of at least 15 executive branch agencies and gained access to systems and sensitive information at the U.S. Department of the Treasury, Department of Education, Consumer Financial Protection Bureau, Office of Personnel Management, and the National Oceanic and Atmospheric Administration, among others.[17] A coalition of labor unions filed a lawsuit alleging that accessing systems with personal information, including Social Security numbers, driver's license numbers, home addresses and more, on tens of millions of Americans without their consent violates federal privacy laws.[18]

---

[12] Establishing and Implementing the President's "Department of Government Efficiency," Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.
[13] Meg Kinnard, A comprehensive look at DOGE's firings and layoffs so far, AP News (Feb, 19, 2025), https://apnews.com/article/doge-firings-layoffs-federal-government-workers-musk-d33cdd7872d64d2bdd8fe70c28652654
[14] Jake Pearson and Anjeanette Damon, The Courts Blocked Trump's Federal Funding Freeze. Agencies Are Withholding Money Anyway, ProPublica (Feb. 10, 2025), https://www.propublica.org/article/trump-administration-funding-freeze-workarounds
[15] Jennifer Hansler et al., Elon Musk Said Donald Trump Agreed USAID Needs to be 'Shut Down', CNN (Feb. 3, 2025, 7:48 AM EST), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge/index html; Elon Musk (@elonmusk), X (formerly Twitter) (Feb. 3, 1:54 AM), https://x.com/elonmusk/status/1886307316804263979; Mark Townsend et al., Deaths Predicted Amid the Chaos of Elon Musk's Shutdown of USAid, The Guardian (Feb 4, 2025, 11:28 EST), Mark Townsend, Karen McVeigh, Charles Pensulo, Caroline Kimeu, and Luke Taylor, Deaths predicted amid the chaos of Elon Musk's shutdown of USAid, The Guardian (Feb. 4, 2025), https://www.theguardian.com/global-development/2025/feb/04/deaths-predicted-amid-the-chaos-of-elon-musks-shutdown-of-usaid; Compl. ¶¶ 29-34, American Oversight v. U.S. Department of Government Efficiency, No. 25-cv-409, (D.D.C., Feb. 11, 2025), https://s3.documentcloud.org/documents/25520469/1american-oversight-v-doge-records-related-to-firings-of-inspectors-general-musks-communications-with-congress.pdf.
[16] Collin Binkley and Bianca Vázquez Toness, "DOGE Cuts $900m from Agency that Tracks Academic Progress." Time Magazine (Feb. 12, 2025), time.com/7221227/doge-cuts-education-agency-funding-academic-progress/.
[17] Compl. ¶ 27, American Oversight v. U.S. Department of Government Efficiency, No. 25-cv-409, (D.D.C., Feb. 11, 2025).
[18] Collin Binkley, Labor Unions Sue to Block DOGE Access to Sensitive Information at US Agencies, AP News

Moreover, a contractor that runs threat intelligence for the Treasury Department's Bureau of Fiscal Service warned department officials that DOGE staff members' access to a sensitive payment network represented an "unprecedented insider threat risk."[19]

While Musk claims that DOGE has been "maximally transparent" in its actions, in reality, the public has very little information about the entity and its operations and priorities.[20] The federal website for DOGE, www.doge.gov contains no substantive information about its plans, structure, process, or personnel.

Further, recent reports indicate that DOGE staff are violating the Federal Records Act, 44 U.S.C. §§ 3101 et seq., by using the messaging platform Signal to communicate, which can be set to automatically delete messages, metadata, and other content as soon as the message is seen by recipients.[21] In addition, 404 Media reported that DOGE employees have been ordered to stop generating messages on the messaging platform Slack, in an apparent attempt to avoid public disclosure of DOGE messages.[22] Indeed, the Administration has indicated that it will seek to evade disclosure of DOGE records under FOIA, asserting that the USDS, which purportedly oversees DOGE, was reorganized under the Executive Office of the President ("EOP") and thus is subject to the Presidential Records Act, which shields from the public all documents, communication trails and records from the president and their advisors and staff until five years after that president leaves office.[23] DOGE has also directed the Consumer Financial Protection Bureau ("CFPB") to notify and coordinate with it regarding any requests for information or

(Feb. 10, 2025, 3:56 PM PST), https://apnews.com/article/trump-education-doge-musk-lawsuit-46f348d9d1b55076b0eb6da35eeb75a0.

[19] Compl. ¶ 38, *American Oversight v. U.S. Department of Government Efficiency*, No. 25-cv-409, (D.D.C., Feb. 11, 2025); Treasury was warned DOGE access to payments marked an 'insider threat', The Washington Post (Feb. 7, 2025), https://www.washingtonpost.com/national-security/2025/02/07/doge-treasury-payments-system-warning/.

[20] Hugo Lowell, Elon Musk appears with Trump and tries to claim 'Doge' team is transparent, The Guardian (Feb. 11, 2025 8.52 PM EST), https://www.theguardian.com/us-news/2025/feb/11/elon-musk-trump-doge

[21] *See* Letter to Elon Musk and Multiple Federal Agencies Warning Against the Unlawful Destruction or Removal of DOGE Communications (Jan. 22, 2025), American Oversight, https://www.documentcloud.org/documents/25502530-american-oversight-letters-to-elon-musk-and-multiple-federal-agencies-warning-against-the-unlawful-destruction-or-removal-of-doge-communications/; *see, e.g*., Ken Thomas, Kevin T. Dugan and Peter Rudegeair, Inside the Early Days of DOGE, Wall Street Journal (Jan. 17, 2025), https://www.wsj.com/politics/policy/doge-federal-reform-musk-ramaswamy-118a3833?reflink=desktopwebshare permalink; Theodore Schleifer and Madeleine Ngo, Inside Elon Musk's Plan for DOGE to Slash Government Costs, N.Y. Times (Jan. 21, 2025), https://www nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump html?partner=slack&smid=sl-share; Disappearing Messages with a Linked Device, Signal Support, https://support.signal.org/hc/en-us/articles/5532268300186-Disappearing-Messages-with-a-Linked-Device.

[22] Jason Koebler and Joseph Cox, DOGE Employees Ordered to Stop Using Slack While Agency Transitions to Records System That Is Not Subject to FOIA, 404 Media (Feb. 5, 2025), https://www.404media.co/email/dc4f2fa1-e993-4f30-aea1-b985998bd90a/?ref=daily-stories-newsletter.

[23] Minho Kim, Trump's Declaration Allows Musk's Efficiency Team to Skirt Open Records Laws, N.Y. Times (Feb. 10, 2025), https://www.nytimes.com/2025/02/10/us/politics/trump-musk-doge-foia-public-records html. However, DOGE does more than merely advise and assist the President. DOGE essentially has acted as an agency, exercising authority independently of the President, and thus is not subject to the Presidential Records Act and must comply with FOIA.

oversight related to DOGE's work, according to Bloomberg's FOIA Files newsletter.[24]

In addition, Elon Musk's leadership of DOGE raises serious conflict-of-interest concerns, given that he owns numerous companies that are regulated by the agencies that DOGE is seeking to dismantle. Some of his companies were the subject of active investigation by the agencies DOGE is targeting; for example, USAID was investigating Musk's company Starlink's operations in Ukraine prior to his directive to dismantle it.[25] The National Highway Traffic Safety Administration investigated Musk's Tesla's autopilot system and identified design flaws that "led to foreseeable misuse and avoidable crashes" in an April report linking the technology to 13 fatalities.[26] And the Food and Drug Administration and Department of Agriculture are investigating Neuralink, Musk's brain computer chip company, over its animal testing practices.[27] DOGE is working to gut the CFPB, which would directly regulate a new payment service to be offered by Musk's company X.[28] Despite this, Musk and the Administration have not provided any specific information about how DOGE's actions interact with Musk's business interests, Musk has not recused himself from matters that could impact his financial interests, and the White House has stated that Musk's financial disclosures will remain confidential.[29] The Administration is also claiming that Elon Musk is not even an employee of DOGE, but rather is a "Senior Advisor to the President" with "no actual or formal authority to make government decisions himself," which conflicts with President Trump and Musk's own public representations, including in a press conference about DOGE's actions from the Oval Office last week.[30] Just this week, a federal judge expressed concern about "what appears to be the unchecked authority of an unelected individual and an entity that was not created by Congress and over which it has no oversight."[31]

For all of these reasons, there is "urgency to inform the public" about OMB and DOGE's

[24] Jason Leopold, Elon Musk's DOGE Wants to Be Notified About Any Requests for Oversight, Bloomberg (Feb. 14, 2025), https://www.bloomberg.com/news/newsletters/2025-02-14/elon-musk-s-doge-wants-to-be-notified-about-foias

[25] Paul K. Martin, Statement for U.S. House Foreign Affairs Subcommittee on Oversight and Accountability, "Foreign Policy, Interrupted: How Fraud, Waste, and Abuse Blunt America's Impact Abroad" (Sep. 26, 2024) https://docs.house.gov/meetings/FA/FA17/20240926/117696/HHRG-118-FA17-Wstate-MartinP-20240926.pdf.

[26] ODI Resume, National Highway Traffic Safety Administration, U.S. Department of Transportation (Apr. 25, 2024), https://static.nhtsa.gov/odi/inv/2022/INCLA-EA22002-14498.pdf.

[27] Rachael Levy, Exclusive: Musk's Neuralink faces federal probe, employee backlash over animal tests (Dec. 6, 2022), https://www.reuters.com/technology/musks-neuralink-faces-federal-probe-employee-backlash-over-animal-tests-2022-12-05/#:~:text=In%20all%2C%20the%20company%20has,the%20company's%20animal%2Dtesting%20operations.

[28] Bobby Allyn, Elon Musk's DOGE takes aim at agency that had plans of regulating X, NPR (Feb. 12, 2025), https://www.npr.org/2025/02/12/nx-s1-5293382/x-elon-musk-doge-cfpb.

[29] Id.

[30] Elena Moore, Trump and Musk appear together in the Oval Office to defend the work of DOGE, NPR (Feb. 11, 2025), https://www.npr.org/2025/02/18/g-s1-49450/elon-musk-doge-leader; https://www.npr.org/2025/02/11/nx-s1-5293504/trump-musk-doge-oval-office

[31] Stephen Fowler, A federal judge has denied states' bid to halt DOGE and Musk's work, NPR (Feb. 18, 2025), https://www.npr.org/2025/02/18/g-s1-49450/elon-musk-doge-leader

actions, which raise "questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence." This request seeks to shed light on OMB and DOGE's plans, motives, directives, and potential conflicts of interest as reflected in staff members' external communications. DOGE's actions to gut federal agencies and access highly sensitive information about tens of millions of Americans and OMB's actions to implement a federal funding freeze have instilled serious doubt regarding the federal government's integrity. It is urgent that the public understand more about what actions OMB and DOGE are taking and why.

## DUTY TO PRESERVE RECORDS

OMB and DOGE must preserve all the records requested herein while this FOIA is pending or under appeal. 5 C.F.R. §1303.80 ("OMB will not dispose of or destroy records while they are the subject of a pending request, appeal, or lawsuit under the FOIA."); *see Chambers v. U.S. Dep't of Interior,* 568 F.3d 998, 1004 (D.C. Cir. 2009) ("an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act"). **Accordingly, please immediately advise custodians of potentially responsive records that the above records have been requested under FOIA and therefore may not be destroyed.**

If any of the requested records are destroyed, the agency and responsible officials are subject to attorney fee awards and sanctions, including fines and disciplinary action. Courts have held federal agencies in contempt for "contumacious conduct" and ordered them to pay plaintiff's costs and fees for destroying "potentially responsive material contained on hard drives and email backup tapes." *Landmark Legal Found. v. Dep't of Interior,* 272 F.Supp.2d 59, 62 (D.D.C. 2003); *see also Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) (awarding attorneys' fees and costs because, among other factors, agency's "initial search was unlawful and egregiously mishandled and …likely responsive documents were destroyed and removed"), *aff'd in relevant part*, 470 F.3d 363, 375 (D.C. Cir. 2006) (remanding in part to recalculate attorney fees assessed). In another case, in addition to imposing a $10,000 fine and awarding attorneys' fees and costs, the court found that an Assistant United States Attorney prematurely "destroyed records responsive to [the] FOIA request while [the FOIA] litigation was pending" and referred him to the Department of Justice's Office of Professional Responsibility. *Jefferson v. Reno*, 123 F. Supp. 2d 1, 6 (D.D.C. 2000).

## EXEMPT RECORDS

Should you decide to invoke a FOIA exemption with regard to any of the requested records, please include in your full or partial denial letter sufficient information for the Sierra Club to appeal the denial. To comply with legal requirements, the following information must be included:

9

1.  Basic factual material about each withheld item, including the originator, date, length, general subject matter, and location of each item; and

2.  Explanations and justifications for denial, including the identification of the category within the governing statutory provision under which the document (or portion thereof) was withheld and a full explanation of how each exemption fits the withheld material.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and deliver the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

## FORMAT OF REQUESTED RECORDS

Under FOIA, you are obligated to provide records in the format requested if the record is readily reproducible by the agency in that format. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B). We request that you provide electronic documents individually, and not as batched files. Specifically, for any document stored as Electronically Stored Information (ESI), we request that the document be produced in the native file type.  This includes e-mail (whether sent, received, or drafted), word-processing files, tables, charts, graphs and database files, electronic calendars, proprietary software files, and spreadsheets. ESI can also be provided in the form of a load file that includes a common file type (TIFF, HTML, PDF) while maintaining access to the native file and its source data, including the ability to keyword search documents.

## RECORD DELIVERY

We appreciate a prompt determination on the requested records. As mandated by FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). Failure to comply within the statutory timeframe may result in Sierra Club filing an action in U.S. District Court to ensure timely receipt of the requested materials. You may email copies of the requested records to the following address, or arrange for other electronic transfer by contacting:

> Radhika Swaminarayan, Senior Paralegal
> radhika.swaminarayan@sierraclub.org

If you are unable to deliver the documents through electronic means, please deliver the documents to:

> Radhika Swaminarayan
> Sierra Club - Environmental Law Program

50 F St NW
Washington, DC 20001

Please send documents on a rolling basis. OMB and DOGE's search for—or deliberations concerning—certain records should not delay the production of others that OMB or DOGE have already retrieved and elected to produce.

## **FEE WAIVER REQUEST**

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 5 C.F.R. § 1303.94. Given its role in using its expertise and editorial skills to turn the information gathered from responsive documents into a "distinct work" and distribute that work to an audience, Sierra Club satisfies the definition of a "representative of the news media," 5 U.S.C. §1303.94(h), but it also independently meets each of the factors for a public interest fee waiver request, as described below.

Sierra Club is the nation's oldest grassroots organization and a leading non-governmental organization seeking to educate and mobilize the public on issues of environmental protection including climate change, fossil fuel energy, clean energy, and clean water. Sierra Club has spent years promoting the public interest through the development of policies that protect human health and the environment, and has routinely received fee waivers under FOIA.[32]

FOIA was designed to provide citizens with a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as Sierra Club access to government records without the payment of fees. *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (fee waiver provision intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups.").

As explained below, this FOIA request satisfies the factors listed in OMB's governing regulations for waiver or reduction of fees, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government

---

[32] For example, *see* FOIA Request Reference No. EPA-HQ-2017-008568 (fee letter waiver received June 28, 2017).

and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 5 C.F.R. §1303.94.

### 1. The subject matter of the requested records specifically concerns identifiable "operations and or activities of the Federal government."

The requested records relate to the communications of OMB and DOGE personnel with external parties concerning agency business, which reflect the activities and work of these personnel on behalf of the agency. By their very definition, the records concern "identifiable operations or activities of the government." 5 C.F.R. §1303.94(b)(1).

### 2. The disclosure of the requested documents is "likely to contribute significantly to public understanding of those operations or activities."

Disclosure of the requested records will allow the Sierra Club to convey information to the public about the communications and correspondence of OMB and DOGE personnel, which will reflect the entities' actions, objectives, and priorities, and specifically, will shed light on how outside parties have influenced them. This is an issue of heightened public interest and concern, given OMB's actions to freeze federal funding and DOGE's measures to enact sweeping and unprecedented change in federal agencies by cutting important staff, programs, and funding. The Trump Administration has a history of close alignment with fossil fuel and other industry interests, and agency staff have moved to implement the President's agenda at the expense of public health and natural resource protection.[33] Further, as mentioned above, Elon Musk, the leader of DOGE, owns numerous companies regulated by the very agencies that DOGE seeks to dismantle. The requested records will provide crucial information about OMB and DOGE staff members' communications with outside parties, including companies owned by Elon Musk, and shed light on potential conflicts of interest.

Once the requested documents are made available, Sierra Club will analyze them and present its findings to its members, online activists, and the general public in a manner that will meaningfully enhance the public's understanding of how OMB and DOGE have been acting and operating. The documents requested will thus be "meaningfully informative" and "likely to contribute" to an understanding of OMB and DOGE's interests and operations.

---

[33] *See, e.g.*, Dharna Noor, Big oil spent $445m in last election cycle to influence Trump and Congress, report says, The Guardian (Jan. 23, 2025), https://www.theguardian.com/us-news/2025/jan/23/big-oil-445m-trump-congress; Jeff Brady, As Trump vows to embrace fossil fuels, U.S. climate policy won't change quickly, NPR (Feb. 1, 2025), https://www.npr.org/2025/02/01/nx-s1-5273496/trump-biden-climate-change-energy-fossil-fuels-paris-agreement; Dharna Noor, Outrage as Trump cites 'emergency' to fast-track fossil fuel projects, The Guardian (Feb. 19, 2025), https://www.theguardian.com/us-news/2025/feb/19/trump-fossil-fuel-climate; Lisa Friedman, Trump Administration Moves to Fast-Track Hundreds of Fossil Fuel Projects, N.Y. Times (Feb. 19, 2025), https://www.nytimes.com/2025/02/19/climate/army-corps-engineers-fossil-fuel-permits.html .

The requested records are not otherwise in the public domain and are not accessible other than through a FOIA request, and accordingly, are likely to meaningfully contribute to public understanding of governmental operations.

### 3. The disclosure would contribute to the understanding of a broad audience, as opposed to the individual understanding of the requester or a narrow segment of interested persons.

Sierra Club has longstanding experience and expertise in the subject area of this FOIA request, as OMB's actions to freeze federal funds and DOGE's actions to gut agencies and freeze funding impact a wide array of environmental issues, including issues related to renewable energy, air quality, water quality, electric vehicles, mining pollution, industrial decarbonization, residential energy efficiency, distributed solar energy, and environmental justice.

Sierra Club disseminates the information it receives through FOIA requests in a variety of ways, including: analysis and distribution to the media, distribution through publication and mailing, posting on its website, emailing and list serve distribution to our members across the U.S., and via public meetings and events. Every year the Sierra Club website receives over 15 million page views by 6,003,134 users; on average, the site gets 39,400 visits per day. *Sierra* is a magazine with a printed circulation of approximately 370,000 copies. An additional 60,000 Sierra Club members receive a "tree-free" digital replica edition. Sierra publishes online daily at www.sierramagazine.org and reaches about 150,000 readers a month, most of whom are not Sierra Club members or supporters. Sierra Club Insider, an electronic newsletter, is sent to over 2.2 million people twice a month.[34]

Sierra Club intends to share the information received from this FOIA request with the public at large, our members, the media, and our allies who share a common interest in the operations of OMB. Sierra Club's Freedom of Information Act work has been nationally recognized for its success in exposing corruption and extremism in the Trump Administration. Former EPA Administrator Scott Pruitt and Chief Air Quality official Bill Wehrum resigned due in part to information exposed through Sierra Club's Freedom of Information requests. As an article in the Hill stated, "A Trump administration official described the string of FOIA documents following the Sierra Club's lawsuit as 'the silver bullet' that ended Pruitt,"[35] and a Slate article opined that "Some of the wildest misconduct from the Pruitt era may never have made it into the public eye

---

[34] These facts support Sierra Club's classification as a "representative of the news media" for purposes of assigning a fee category, at a minimum. 5 C.F.R. §1303.90(h). However, Sierra Club also seeks a full fee waiver pursuant to the public interest factors outlined in 5 C.F.R. §1303.984. The figures in this paragraph were last updated in July 2024, but remain similar.

[35] Miranda Green, Ex-aide says he'll take credit for Pruitt's downfall, The Hill, (Jul. 8, 2018), https://thehill.com/policy/energy-environment/396000-ex-aide-says-hell-take-credit-for-pruitts-downfall.

were it not for the Sierra Club."[36] Sierra Club unquestionably has "expertise in the subject area" and "ability and intention to effectively convey information to the public." As a result, Sierra Club satisfies 5 C.F.R. §1303(b)(2)(ii).

**4. The requester has no commercial interest that would be furthered by the requested disclosure.[37]**

Sierra Club has no commercial interest in the requested records. Nor does it have any intention to use these records in any manner that furthers a "commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a nonprofit, tax-exempt organization under sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code, and as such has no commercial interest. The requested records will be used for the furtherance of Sierra Club's mission to inform the public on matters of vital importance to the environment and public health.

Sierra Club respectfully requests that OMB and DOGE waive all search and copying fees pursuant to 5 U.S.C. § 552(a)(4)(A) because, as detailed above, the public will be the primary beneficiary of this requested information. In the event that your agency denies a fee waiver, please send a written explanation for the denial. In the event that fees are ultimately assessed, please do not incur expenses beyond $250 without first contacting me for explicit authorization.

Thank you for your cooperation. If you find that this request is unclear in any way please do not hesitate to call me to see if I can clarify the request or otherwise expedite and simplify your efforts to comply.

Sincerely,

*/s/Joya Manjur*
Joya Manjur
*/s/Elena Saxonhouse*
Elena Saxonhouse
Sierra Club Environmental Law Program
2101 Webster St. Suite 1300
Oakland, CA 94612
(415) 977-5638
joya.manjur@sierraclub.org

---

[36] Aaron Mak, The Sierra Club Declared War on Scott Pruitt – and Won, Slate (Jul. 20, 2018), https://slate.com/technology/2018/07/scott-pruitt-how-the-sierra-club-declared-war-on-the-epa-head-and-won.html.
[37] Because Sierra Club has no commercial interest, it is not necessary to consider the final factor for a fee waiver, which compares the magnitude of an identified commercial interest to the public interest in disclosure.

14

# Attachment A

**Sierra Club FOIA - Attachment A**

| Organization Name | Organization Domain |
|---|---|
| Alaska Chamber of Commerce | alaskachamber.com |
| Alliance of Automobile Manufacturers | autoalliance.org |
| Alliance Resource Partners LP | arlp.com |
| Alpha Metallurgical Resources | alphanr.com |
| America's Electric Cooperatives | nreca.org |
| American Biomass Energy Association | usabiomass.org |
| American Chemistry Council | americanchemistry.com |
| American Coal Council | americancoalcouncil.org |
| American Coatings Association | paint.org |
| American Exploration & Production Council | axpc.org |
| American Farm Bureau Federation | fb.org |
| American Forest & Paper Association | afandpa.org |
| American Forest Foundation | forestfoundation.org |
| American Fuel & Petrochemical Manufactures | afpm.org |
| American Gas Association | aga.org |
| American Legislative Exchange Council | alec.org |
| American Petroleum Institute | api.org |
| American Public Power Association | publicpower.org |
| American Wood Council | awc.org |
| Americans for Prosperity | afphq.org |
| Americans for Tax Reform | atr.org |
| Arch Resources | archcoal.com |
| Association of Global Automakers | globalautomakers.org |
| Balch & Bingham LLP | balch.com |
| Basin Electric Power Cooperative | basinelectric.com |
| Becker | bplegal.com |
| BGR Group | bgrdc.com |
| BNSF Railway | bnsf.com |
| Bockorny Group | bockornygroup.com |
| Boring Company | boringcompany.com |
| Boulder Rifle Club | boulderrifleclub.com |
| BP | bp.com |

## Sierra Club FOIA - Attachment A

| | |
|---|---|
| Bracewell | bracewell.com |
| Breitbart News | breitbart.com |
| Cato Institute | cato.org |
| CGCN Group | cgcn.com |
| Chemours | chemours.com |
| Chevron | chevron.com |
| City Utilities | cityutilities.net |
| Clean Fuels Alliance America | biodiesel.org |
| Clear Path | clearpath.org |
| Colorado Farm Bureau Federation | coloradofarmbureau.com |
| Colorado Mining Association | coloradomining.org |
| Colorado Petroleum Council | coloradopetroleumassociation.com |
| Colorado Union of Taxpayers Foundation | coloradotaxpayer.org |
| Competitive Enterprise Institute | cei.org |
| ConocoPhillips | conocophillips.com |
| Conservative Political Action Conference | cpac.org |
| Consolidated Edison | coned.com |
| Continental Resources | clr.com |
| Corn Refiners Association | corn.org |
| Cornea Inc | cornea.is |
| CropLife America | croplifeamerica.org |
| Crowell | crowell.com |
| Domestic Energy Producers Alliance | depausa.org |
| Dominion | dominionenergy.com |
| Dow | dow.com; dowcorning.com |
| Duke Energy | duke-energy.com |
| Dupont | dupont.com |
| Edison Electric Institute | eei.org |
| EMX Royalty | emxroyalty.com |
| Enbridge | enbridge.com |
| EPRI | epri.com |
| Equitrans Midstream Corp | equitransmidstream.com |
| Exxon Mobil | exxonmobil.com |

**Sierra Club FOIA - Attachment A**

| | |
|---|---|
| Faegre Drinker Biddle & Reath LLP | faegrebd.com |
| Family Research Council | frc.org |
| Ford | ford.com |
| Fox Business | foxbusiness.com |
| Fox News | foxnews.com |
| Fox TV | foxtv.com |
| Fox23 News | fox23.com |
| Fox61 News | fox61.com |
| Free Beacon | freebeacon.com |
| Gavin Power | gavinpower.com |
| George Mason University, Mercatus Center | mercatus.gmu.edu |
| Gibson Dunn | gibsondunn.com |
| GM | gm.com |
| Hess | hess.com |
| Holland & Knight | hklaw.com |
| Hunton Andrews Kurth | hunton.com |
| IADC | iadc.org |
| Idaho Cattle Association | idahocattle.org |
| Idaho Farm Bureau Federation | idahofb.org |
| Independent Petroleum Association of America | ipaa.org |
| Kinder Morgan | kindermorgan.com |
| Koch | kochinc.com; kochps.com |
| Lower Colorado River Authority | lcra.org |
| Louisville Gas & Electric/Kentucky Utilities | lge-ku.com |
| Liberty Energy | libertyenergy.com |
| Lignite Energy Council | lignite.com |
| Manhattan Institute | manhattan-institute.org |
| Marathon Oil | marathonoil.com |
| Marathon Petroleum | marathonpetroleum.com |
| McGuireWoods | mcguirewoods.com |
| Moncrief Oil | moncrefoil.com |
| Monsanto | monsanto.com |
| Montana Farm Bureau Federation | mfbf.org |

## Sierra Club FOIA - Attachment A

| | |
|---|---|
| Morgan Lewis | morganlewis.com |
| National Alliance of Forest Owners | nafoalliance.org |
| National Association of Home Builders | nahb.org |
| National Black Chamber of Commerce | nationalbcc.org |
| National ESA Reform Coalition | nesarc.org |
| National Mining Association | nma.org |
| National Petroleum Council | npc.org |
| National Pork Producers Council | nppc.org |
| National Rifle Association | nra.org; nrahq.org |
| National Wood Products | nationalwood.com |
| Neuralink Corporation | neuralink.com |
| NextEra | nexteraenergy.com |
| North Dakota Petroleum Council | ndoil.org |
| NTK News | ntknetwork.com |
| Ohio Valley Electric Corporation/Indiana-Kentucky Electric Corporation | ovec.com |
| Oklo Inc. | oklo.com |
| Peabody Energy | peabodyenergy.com |
| Pebble | pebblepartnership.com |
| Portland Cement Association | cement.org |
| Property Rights Foundation of America | influencewatch.org |
| Renewable Fuels Association | ethanolrfa.org |
| Republican Attorneys General | republicanags.com |
| Republican Governors Association | rga.org |
| Republican National Committee | gop.com; action.gop.com |
| Rothe Development, Inc. | rothe.com |
| Rule of Law Defense Fund | ruleoflawdefensefund.org |
| Safari Club International | safariclub.org |
| Shell | shell.com |
| Sidley | sidley.com |
| Sila Nanotechnologies | silanano.com |
| South Dakota Cattlemen's Association | sdcattlemen.org |
| South Dakota Farm Bureau Federation | sdfbf.org |

**Sierra Club FOIA - Attachment A**

| | |
|---|---|
| Southern Illinois Power Cooperative | sipower.org |
| SpaceX | spacex.com |
| Starlink | starlink.com |
| State Policy Network | spn.org |
| Statoil | statoil.com |
| Steamboat Institute | steamboatinstitute.org |
| Steptoe & Johnson PLLC | steptoe-johnson.com |
| TABOR Foundation | thetaborfoundation.org |
| Talen Energy | talenenergy.com |
| Tea Party Patriots Action | teapartypatriots.org |
| Tesla | tesla.com |
| Texas Government | State.tx.us |
| Texas Office of the Attorney General | texasattorneygeneral.gov |
| Texas Oil & Gas Association | txoga.org |
| Texas Public Policy Foundation | texaspolicy.com |
| The American Exploration & Mining Association | miningamerica.org |
| The Coalition for Renewable Natural Gas | rngcoalition.com |
| The Federalist Society | fedsoc.org; fed-soc.org |
| The Heartland Institute | heartland.org |
| The Heritage Foundation | heritage.org |
| Toyota | toyota.com |
| Twitter/X | twitter.com; x.com |
| TransCanada | transcanada.com; tcenergy.com |
| U.S. Chamber of Commerce | uschamber.com |
| U.S. House of Representatives | house.gov |
| U.S. Senate | senate.gov |
| Utah Farm Bureau Federation | utahfarmbureau.org |
| Venable LLP | venable.com |
| Vistra Corp | vistracorp.com |
| Washington Examiner | washingtonexaminer.com |
| West Virginia Coal Association | wvcoal.com |
| Western Caucus Foundation | westerncaucusfoundation.org |
| Western Governors Association | westgov.org |

## Sierra Club FOIA - Attachment A

| | |
|---|---|
| Western Growers Advocacy | wga.com |
| Wyoming Farm Bureau Federation | wyfb.org |
| Wyoming Wool Growers Association | wyowool.com |
| xAI | xai.com |

# EXHIBIT H



Joya Manjur <joya.manjur@sierraclub.org>

---

# ACK – OMB FOIA REQUEST 2025-825 - RE: [EXTERNAL] FOIA Request re External Communications

---

**MBX OMB FOIA** <MBX.OMB.FOIA@omb.eop.gov>                          Mon, Jun 9, 2025 at 9:38 AM
To: "joya.manjur@sierraclub.org" <joya.manjur@sierraclub.org>
Cc: MBX OMB FOIA <MBX.OMB.FOIA@omb.eop.gov>

Dear Joya Manjur,


Thank you for inquiring about the status of your seven Freedom of Information Act (FOIA) requests submitted to the Office of Management and Budget (OMB) on February 26, 2025 and assigned tracking number 2025-825.  We appreciate you reaching out to us.  OMB is doing its best to process each FOIA request as quickly as possible in the order they are received.  We ask for your patience as OMB is experiencing a significant increase in new FOIA matters and a shortage of FOIA processors.  As of today, your FOIA request sits at number 1,390 out of a total of more than 2,120 requests in our backlog queue.  Based on your place in the backlog queue, our best estimate at this time for completing the processing of your FOIA request is 36-48 months.  For additional updates, we ask that you check back in with us periodically.  Your understanding and patience are greatly appreciated.


Sincerely,

OMB's FOIA Team

---

**From:** Joya Manjur <joya.manjur@sierraclub.org>
**Sent:** Wednesday, May 7, 2025 10:00 AM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Cc:** Elena Saxonhouse <elena.saxonhouse@sierraclub.org>; Radhika Swaminarayan <radhika.swaminarayan@sierraclub.org>
**Subject:** Re: ACK – OMB FOIA REQUEST 2025-825 - RE: [EXTERNAL] FOIA Request re External Communications


Dear OMB FOIA Team,

I am writing to follow up on my Freedom of Information Act (FOIA) request number 2025-825, submitted on February 24, 2025.

I have not received any updates from your office about the status of my request since you acknowledged receipt on February 26, 2025. Can you please provide an expected completion date for this request?

Thank you for your time and attention to this matter.

Best,
Joya Manjur



**Joya Manjur**
**Associate Attorney**
**Sierra Club Environmental Law Program**
Pronouns: she/her
**(415) 977 5638** | Pacific Time
joya.manjur@sierraclub.org

CONFIDENTIAL LEGAL COMMUNICATION/WORK PRODUCT

This email may contain privileged and confidential communications and/or confidential attorney work product. If you receive this email inadvertently, please reply and notify the sender and delete all versions from your system. Thank you.

On Wed, Feb 26, 2025 at 6:38 AM MBX OMB FOIA <MBX.OMB.FOIA@omb.eop.gov> wrote:

Hello Ms. Manjur:

This email acknowledges receipt of your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated and received in this office on **February 26, 2025**. Your request has been logged in and is being processed. For your reference, the OMB FOIA number is 2025-825.

Thank you,

OMB FOIA Team

**From:** Joya Manjur <joya.manjur@sierraclub.org>
**Sent:** Monday, February 24, 2025 5:21 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.EOP.gov>
**Cc:** Elena Saxonhouse <elena.saxonhouse@sierraclub.org>; Radhika Swaminarayan <radhika.swaminarayan@sierraclub.org>
**Subject:** [EXTERNAL] FOIA Request re External Communications

Good afternoon,

Please see the attached FOIA request and kindly acknowledge receipt.

7/1/25, 12:46 PM    Sierra Club Mail - SACHC - OMB FOIA 2024-2011, 2024-825 - RE (EXTERNAL) FOIA Request for External Communications

Case 3:25-cv-05732-LJC    Document 1-1    Filed 07/08/25    Page 56 of 58

Thank you,

Joya Manjur



**Joya Manjur**
**Associate Attorney**
**Sierra Club Environmental Law Program**
**Pronouns: she/her**
(415) 977 5638 | Pacific Time
joya.manjur@sierraclub.org

CONFIDENTIAL LEGAL COMMUNICATION/WORK PRODUCT

This email may contain privileged and confidential communications and/or confidential attorney work product. If you receive this email inadvertently, please reply and notify the sender and delete all versions from your system. Thank you.

# EXHIBIT I



Joya Manjur <joya.manjur@sierraclub.org>

---

## Automatic reply: ACK – OMB FOIA REQUEST 2025-825 - RE: [EXTERNAL] FOIA Request re External Communications

1 message

---

**MBX OMB FOIA** <MBX.OMB.FOIA@omb.eop.gov>                    Wed, May 7, 2025 at 7:00 AM
To: Joya Manjur <joya.manjur@sierraclub.org>

This is a system-generated reply. The Office of Management and Budget has received the information you submitted to the OMBFOIA@omb.eop.gov mailbox and through the FOIA.gov portal.  We will provide further information where appropriate.

Please note that the U.S. Department of Government Efficiency is not a component of the Office of Management and Budget (OMB).  Pursuant to Executive Order (E.O.) 14158 of January 20, 2025, "Establishing and Implementing the President's 'Department of Government Efficiency,'" the United States Digital Service was publicly renamed and reformed as the United States DOGE Service (USDS) and was established in the Executive Office of the President. As a result, any USDS records created on or after January 20, 2025, are not within the legal custody and control of OMB. OMB does not process FOIA requests on behalf of USDS.

Thank you,

OMB's FOIA Office